UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CURTIS DALE RICHARDSON, | ) | Civil Action No.: 4:15-cv-3317-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| MATT MAHON, Loris S.C. Policeman; | ) | **REPORT AND RECOMMENDATION** |
| KAREN SHEPARD, Chief of Police of | ) | |
| Loris, S.C.; and JEFF GORE[1], | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging various violations of his constitutional rights. Presently before the court is Defendants' Motion for Summary Judgment (Document # 81) and Plaintiff's Motion for Preliminary Injunction and to Compel (Document # 88).[2] Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint. Plaintiff timely filed a Response (Document # 91). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This report and recommendation is entered for review by the district judge.

---

[1]Defendants Sgt. Richardson, Major Johnson, and SCDC Classification Supervisor (name unknown) have been dismissed from this action. See Order (Document # 34).

[2]Defendants first filed a Motion for Summary Judgment (Document # 51) prior to the amendment of Plaintiff's complaint. That motion is **moot**.

## II.     FACTS

On April 14, 2015, Defendant City of Loris Police Officer Matt Mahon personally observed a vehicle owned and being operated by Plaintiff in the City of Loris, State of South Carolina. Mahon Aff. ¶ 8 (Ex. 2 to Def. Motion). Based on his prior dealings with Plaintiff, Officer Mahon knew that Plaintiff's driver's license was suspended and the vehicle being operated by him did not have insurance. Mahon Aff. ¶ 8. Officer Mahon activated the blue lights on his patrol vehicle and proceeded to stop Plaintiff's vehicle. Mahon Aff. ¶ 8. Plaintiff exited the driver's side of the vehicle and Dana Smith exited the passenger's side. Mahon Aff. ¶ 8. Officer Mahon placed Plaintiff under arrest. Mahon Aff. ¶ 8. Incident to Plaintiff's arrest, Officer Mahon searched Plaintiff and found two (2) .22 caliber cartridges in his pants' pocket. Mahon Aff. ¶ 8. Officer Mahon verified through dispatch that Plaintiff still did not have a valid driver's license and that the license tag on Plaintiff's vehicle had been reported stolen. Mahon Aff. ¶ 8. Plaintiff voluntarily informed Officer Mahon that he did not have insurance on the vehicle. Mahon Aff. ¶ 8. Officer Mahon also observed a half-filled bottle of whiskey on the Plaintiff's vehicle's driver's seat. Mahon Aff. ¶ 8. Thereafter, Officer Williams of the Horry County Police Department arrived on the scene. Mahon Aff. ¶ 8. Officer Williams spoke to Smith and she told him that Plaintiff had a gun on him and, in the process of the traffic stop, he hid the gun between the carpet and the floor of the driver's seat of the vehicle. Mahon Aff. ¶ 8. Ms. Smith voluntarily provided a written statement to law enforcement indicating such. Mahon Aff. ¶ 8; Voluntary Statement of Dana Smith (Ex. 4 to Def. Motion). Officer Mahon looked into Plaintiff's vehicle and observed in plain view what appeared to be the butt of a handgun protruding from between the carpet and the floor of the driver's seat. Mahon Aff. ¶ 8. Officer Mahon retrieved the handgun from the vehicle, which was loaded with six (6) .22 caliber cartridges, and

confirmed with dispatch that Plaintiff was a convicted felon. Mahon Aff. ¶ 8. Plaintiff's vehicle was towed and he was transported to the J. Reuben Long Detention Center for processing. Mahon Aff. ¶ 8. Plaintiff was cited for not having a valid driver's license, unlawful operation of an uninsured vehicle, an ABC violation and possession of a stolen tag. Mahon Aff. ¶ 8; April 14, 2015 Tickets (Ex. 5 to Def. Motion)). In addition, Arrest Warrant No. 2015A2610200898 was issued and served upon the Plaintiff for unlawful possession of a firearm[3] by a person convicted of felony. Mahon Aff. ¶ 8; April 14, 2015 Warrant (Ex. 6 to Def. Motion).

Plaintiff was released on a five thousand dollar recognizance bond on April 15, 2015. See Horry County Fifteenth Judicial Circuit Public Index Search website, http://www4.rcgov.us/publicindex/ PISearch.aspx?CourtType=G (search by Petitioner's name and "Search Public Index"). On May 28, 2015, Plaintiff appeared in court and pled guilty to not having a valid driver's license, unlawful operation of an uninsured vehicle, an ABC violation, and possession of a stolen tag. See Horry County Fifteenth Judicial Circuit Public Index Search website, http://www4.rcgov.us/publicindex/PISearch.aspx?CourtType=G (search by Plaintiff's name and "Search Public Index").

On May 2, 2015, Officer Mahon responded to a domestic complaint at Plaintiff's residence. Mahon Aff. ¶ 9; May 2, 2015 Incident Report (Ex. 7 to Def. Motion). As he approached Plaintiff's residence, he was met by Plaintiff. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon avers that he detected a strong odor of alcohol coming from Plaintiff. Mahon Aff. ¶ 9; May 2, 2015

---

[3]Prior to this arrest, on April 11, 2015, two men, both armed with a handgun, entered Plaintiff's residence and held Plaintiff, Smith, and others captive while forcibly taking money and items from Plaintiff. Arrest Warrants (Ex. B to Pl. Resp.). Plaintiff asserts that he had the firearm because he feared for his life.

Incident Report. Smith, who was the victim in this instance, also met with Officer Mahon outside of the residence. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon avers that Smith was crying and visibly upset, and that, while he was attempting to speak to her, Plaintiff became angry and started yelling profanities at Officer Mahon, not allowing him to investigate the original complaint with the victim. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon avers that Plaintiff continued getting louder with his profanity and became aggressive. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. He avers that Plaintiff approached him in an aggressive manner and got chest to chest with him. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon avers that he instructed Plaintiff with verbal commands to "back off" and told Plaintiff to "calm down" and to stop yelling profanities. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon avers that Plaintiff refused and so he advised Plaintiff that he was under arrest for public disorderly conduct and told him to place his hands behind his back. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Plaintiff asserts that Smith was not crying or visibly upset, that he did not yell profanities, he did not become aggressive, did not get chest to chest with Office Mahon, and was never given any verbal commands or told that he was under arrest. Pl. Resp. p. 6.[4] Plaintiff states that Smith left after speaking with Officer Mahon so there was no need for Officer Mahon to remain on his property, which, he notes, had numerous "no trespassing" signs, so he "advised [Officer Mahon] to remove himself off of [his] premises." Pl. Resp. p. 5. Officer Mahon avers that Plaintiff actively resisted arrest, and so he deployed his Taser on Plaintiff. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. In the Use of Force Report documenting the use of the Taser, Officer Mahon stated that Plaintiff's level

---

[4] Plaintiff's response is in the form of a sworn statement, signed in the presence of a notary public.

of resistence was "verbal" and "passive physical." Use of Force Report (Ex. H to Pl. Resp.). Plaintiff was then handcuffed. Mahon Aff. ¶ 9; May 2, 2015 Incident Report.  Officer Mahon avers that he believed deploying his Taser was absolutely necessitated based on the facts then existing, his overall training and experience, his prior knowledge of the Plaintiff's extensive and violent criminal history, his own prior dealings with the Plaintiff and the Plaintiff's extremely muscular build.  Mahon Aff. ¶ 9.

Officer Mahon requested Emergency Medical Services, and they responded to the residence. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. However, Plaintiff refused any medical treatment. Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Officer Mahon searched Plaintiff incident to the arrest and located a blue and gray fanny pack that Plaintiff was wearing, a plastic bag containing 20 white, circular, pills and a silver cylinder believed to be a "crack pipe" containing a brass filter.  Mahon Aff. ¶ 9; May 2, 2015 Incident Report. As well, a red container sealed with black tape and a plastic bag was found in the Plaintiff's front pocket.  Mahon Aff. ¶ 9; May 2, 2015 Incident Report. The red container contained what appeared to be cocaine base.  Mahon Aff. ¶ 9; May 2, 2015 Incident Report. The pills were identified as Oxycodone, a Schedule II narcotic.  Mahon Aff. ¶ 9; May 2, 2015 Incident Report. Plaintiff was issued citations for disorderly conduct and drug paraphernalia and transported to the J. Reuben Long Detention Center for processing.  Mahon Aff. ¶ 9; May 2, 2015 Incident Report;  May 2, 2015 Tickets (Ex. 8 to Def. Motion). In addition, Arrest Warrant Nos. 2015A2610201056, 2015A2610201057, and 2015A2610201058 were issued and served upon Plaintiff for unlawful possession of crack cocaine, resisting arrest, and interference with a criminal investigation. Mahon Aff. ¶ 9; May 2, 2015 Warrants. These charges were later dismissed.  Notice of Dismissal (Ex. K to Pl. Resp.); Mahon Aff. ¶ 9.

On July 28, 2015, Plaintiff was indicted on federal weapons charges out of the incident on April 14, 2015,[5] and an arrest warrant was issued for his arrest. See U.S. v. Richardson, 4:15-cr-0492-RBH-1 (Documents # 2, 6 and Ex. 10 to Def. Motion). On July 29, 2015, Officer Mahon, Officer Gore and City of Loris Police Chief Karen Shepherd accompanied members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and Members of the United States Marshal's Task Force to Plaintiff's residence to serve the federal arrest warrant on Plaintiff. Mahon Aff. ¶ 11; Shepherd Aff. ¶ 7 (Ex. 3 to Def. Motion); July 28, 2015 Incident Report (Ex. 11 to Def. Motion). Plaintiff was arrested and taken into custody pursuant to the federal arrest warrant. Mahon Aff. ¶ 11; Shepherd Aff. ¶ 7; July 28, 2015 Incident Report. Incident to this arrest, Plaintiff was searched and a Remington 223 Round and various pills were found. July 28, 2015 Incident Report. Plaintiff asserts that following his arrest, Chief Shepherd and Officer Gore unlawfully searched his residence, then allowed a crack head to move into his house by giving him the keys, and gave the keys to his vehicle to someone who drove it off the premises. Pl. Resp. p. 13.

On November 30, 2015, Plaintiff entered into a plea agreement with respect to the federal indictment, and on January 15, 2016, he entered his guilty plea. U.S. v. Richardson, 4:15-cr-0492-RBH-1 (Documents # 105, 171 and Ex. 12 to Def. Motion). Plaintiff was sentenced on June 16, 2016. See U.S. v. Richardson, 4:15-cr-0492-RBH-1, Judgment (Document # 192). Plaintiff's judgment and sentence were affirmed on appeal. See U.S. v. Richardson, No. 16-4359, (Jan. 3, 2017).

---

[5]As such, Plaintiff's state charge for unlawful possession of a firearm by a person convicted of felony was dismissed. Mahon Aff. ¶ 10.

### III.   STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record,

-7-

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.     DISCUSSION**

    **A.     False Arrest**

Plaintiff alleges that Defendants violated his constitutional rights with respect to the arrests on April 14, 2015, and May 2, 2015. His claims fall under 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

    **1.     April 14, 2015, Arrest**

Plaintiff's arrest on this date was made without a warrant. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct.

588, 160 L.Ed.2d 537 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person .... in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Id. at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir.1996). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir.1998) (internal citations omitted).

     Officer Mahon avers that he witnessed Plaintiff driving his vehicle on the road and pulled him over because he knew Plaintiff's driver's license was suspended and that the vehicle he was driving was uninsured. He then verified this information after he stopped Plaintiff. In addition, following the stop, Officer Mahon witnessed an open container of alcohol in plain view and was told by Smith, a passenger in the vehicle, that Plaintiff had a weapon in the vehicle. Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). Officer Mahon's knowledge that Plaintiff's driver's license was suspended and that his vehicle was uninsured was sufficient probable cause for the traffic stop. See United States v. Trappier, 447 F. App'x 463, 465 (4th Cir. 2011) ("[W]e conclude that given the agents' knowledge that Trappier's driver's license was suspended, the agents had probable cause to effect the traffic stop that resulted in the discovery and seizure of additional narcotics on October 16, 2008). Plaintiff argues that the initial

traffic stop was not supported by probable cause because his windows were tinted so that Officer Mahon could not have known who was driving the vehicle. However, even assuming Plaintiff could testify to what Officer Mahon could or could not see, the fact that Officer Mahon was familiar with Plaintiff's vehicle is sufficient to establish a reasonable belief that it was Plaintiff who was driving it. Accordingly, Plaintiff fails to show that Officer Mahon violated his constitutional rights with respect to this arrest and summary judgment is appropriate.

### 2. May 2, 2015, Arrest

Plaintiff's arrest on this date was made without a warrant as well. Officer Mahon responded to a domestic call at Plaintiff's residence. Officer Mahon avers that subsequent to Plaintiff's arrest for disorderly conduct and resisting arrest, Officer Mahon searched Plaintiff and found Oxycodone, a Schedule II narcotic, a silver cylinder believed to be a "crack pipe," and a container with what appeared to be cocaine base. Plaintiff was issued citations for disorderly conduct and drug paraphernalia and, later, arrest warrants were issued and served upon Plaintiff for unlawful possession of crack cocaine, resisting arrest, and interference with a criminal investigation. While Plaintiff disputes his conduct, he does not dispute that Officer Mahon found Oxycodone, a crack pipe, and what appeared to be cocaine base on Plaintiff. Plaintiff's possession of drugs and drug paraphernalia was sufficient to establish probable cause for his arrest.[6]

---

[6]The court notes that the exclusionary rules or "fruit of the poisonous tree" arguments are not applicable in § 1983 civil actions for monetary damages such as this. See, e.g., Ware v. James City Cnty., Virginia, 652 F.Supp.2d 693, 705 (E.D.Va.2009), aff'd sub. nom., Ware v. James City Cnty., Va., 380 F. App'x 274 (4th Cir.2010) ("This argument fails because 'the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'") (citing Townes v. City of New York, 176 F.3d 138, 148-49 (2d Cir.1999)); Vaughn v. Whitfield, No. 8:12-cv-2405-RMG, 2013 WL 5144751, at *19 (D.S.C. Sept.12, 2013) (internal citations omitted) ("[E]ven if Defendants' conduct violated Plaintiff's Fourth Amendment right, Defendants are not automatically liable under § 1983 or in tort for their subsequent decisions to place Plaintiff under

Because there was probable cause to arrest for at least one charge, the court need not determine whether Officer Mahon also had probable cause to arrest Plaintiff for the other charges. "[P]robable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3rd 1994); see also Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995) ("If there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails."). For fourth Amendment purposes, an arrest on multiple charges is a "single transaction," and probable cause will be found to exist, so long as it existed for at least one offense. See Calusinski v. Kruger, 24 F.3d 931 (7th Cir.1994) (holding that at the time of the arrest police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged). Furthermore, as stated above, the fact that the charges against Plaintiff were eventually dropped is irrelevant to the determination of whether probable cause existed at the time of the arrest. DeFillippo, 443 U.S. at 37. Accordingly, Plaintiff's false arrest claim with respect to his May 2, 2015, arrest is without merit.

In sum, Plaintiff fails to present sufficient evidence to create a genuine dispute of fact with respect to his false arrest claims. Therefore, summary judgment is appropriate.

### B.     Excessive Force

Plaintiff also claims that Officer Mahon used excessive force on May 2, 2015, when he used his Taser on Plaintiff. Protection against force used during arrest is provided by the Fourth

---

arrest ... there is no fruit of the poisonous tree doctrine in the § 1983 context that makes Defendants necessarily liable for seizure that came after a potentially unlawful search. The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, and as such generally operates 'only in criminal trials.'"); Johnson v. City of Greenville, No. 6:13-CV-01652-JMC, 2015 WL 4508812, at *6 (D.S.C. July 24, 2015).

Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of force is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting seizure or attempting to evade seizure by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir.1996)), recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

Under the objective reasonableness standard, the court must first consider the severity of the crime at issue. Here, Officer Mahon was attempting to arrest Plaintiff for disorderly conduct and impeding an investigation for yelling profanity, behaving aggressively, coming towards him, and getting "chest to chest" with him. Plaintiff disputes that he yelled profanity, was aggressive or got "chest to chest" with Officer Mahon. However, the circumstances under which Officer Mahon was at Plaintiff's residence require some consideration under this step as well. It is undisputed that Officer Mahon was responding to a call from Plaintiff's residence regarding a domestic matter. Even

though Plaintiff was not arrested as a result of the domestic abuse complaint, at the time Officer Mahon was interacting with Plaintiff, he was aware that some sort of violent behavior might have taken place.

The next factor to consider is whether Plaintiff posed an immediate threat to the safety of the officers or others. Again, the facts surrounding Plaintiff's conduct and Officer Mahon's use of the Taser are in dispute. Officer Mahon avers that Plaintiff became angry and started yelling profanities at Officer Mahon, continued getting louder with his profanity and became aggressive, approached him in an aggressive manner, got chest to chest with him, ignored his verbal commands to "back off," "calm down," stop yelling profanities, and resisted arrest. Plaintiff states that he did not become angry or yell profanities, he did not become aggressive, did not get chest to chest with Office Mahon, and was never given any verbal commands or told that he was under arrest. Pl. Resp. p. 6. Officer Mahon also avers that he believed deploying his Taser was absolutely necessitated based on the facts then existing, his overall training and experience, his prior knowledge of the Plaintiff's extensive and violent criminal history, his own prior dealings with the Plaintiff and the Plaintiff's extremely muscular build. It is undisputed that, less than three weeks prior, Officer Mahon made a routine traffic stop of Plaintiff and discovered a firearm in Plaintiff's vehicle, and that Officer Mahon knew Plaintiff was a convicted felon. It is further undisputed that the reason Officer Mahon was even at Plaintiff's residence was because he was responding to a domestic abuse complaint. Nevertheless, viewing the evidence in the light most favorable to Plaintiff, as the court must at this stage of the litigation, an issue of fact exists as to whether Plaintiff posed an immediate threat to the safety of Officer Mahon or others when Officer Mahon used his Taser against him. Finally, the court must consider whether Plaintiff was actively resisting arrest or attempting to evade

arrest by flight at the time the force was used. Again, the facts are in dispute. Officer Mahon avers that he told Plaintiff he was under arrest and to put his hands behind his back, and Plaintiff refused and resisted arrest. Plaintiff, on the other hand, states that Officer Mahon never told him he was under arrest and he used his Taser without provocation or justification.

As recently recognized by the Fourth Circuit, "[d]eploying a taser is a serious use of force." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016), cert. denied sub nom. Vill. of Pinehurst, N.C. v. Estate of Armstrong, 137 S. Ct. 61, 196 L. Ed. 2d 32 (2016). However, unlike Armstrong, in which the taser was used five times, here, Officer Mahon used the Taser only once. Still, because of the factual disputes over Plaintiff's and Officer Mahon's conduct during the May 2, 2015, encounter and eventual arrest, and considering "the proportionality of the force in light of all the circumstances," Smith v. Ray, 781 F.3d 95, 101 (4th Cir.2015), a genuine dispute of fact exists as to whether Officer Mahon used excessive force in violation of Plaintiff's constitutional rights.

Even if Officer Mahon did use excessive force, Defendants argue, he is entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir.2011) (en banc). A "qualified immunity analysis," therefore, "typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir.2015). Here, an issue of fact exists as to whether Officer Mahon violated Plaintiff's constitutional rights. Thus, the court moves to the next inquiry of whether that right was clearly established at the time of the violation. This inquiry first

requires that the court "define the precise right into which we are inquiring." Armstrong, 810 F.3d at 907. Because "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established,'" Mullenix v. Luna, ––– U.S. –––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam)(quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)), courts must "not ... define clearly established law at a high level of generality," al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074. As held recently by the Fourth Circuit, " it was clearly established in 2008 that a police officer was not entitled to use unnecessary, gratuitous, or disproportionate force by repeatedly tasing a nonviolent misdemeanant who presented no threat to the safety of the officer or the public and who was compliant and not actively resisting arrest or fleeing." Yates v. Terry, 817 F.3d 877, 887 (4th Cir. 2016) (citing Meyers v. Baltimore Cty., 713 F.3d 723, 734-35 (4th Cir.2013); Jones v. Buchanan, 325 F.3d 520, 532-34 (4th Cir.2003); Bailey v. Kennedy, 349 F.3d 731, 745 (4th Cir.2003); Rowland v. Perry, 41 F.3d 167, 174 (4th Cir.1994); Parker v. Gerrish, 547 F.3d 1, 9–11 (1st Cir.2008); Casey v. City of Fed. Heights, 509 F.3d 1278, 1284-86 (10th Cir.2007)). The arrest here occurred in 2015. In addition, even though the present case does not involve repeated tasing, the established precedent nonetheless provided Officer Mahon with fair notice that the force he used, which, according to Plaintiff was unprovoked, was unconstitutional. Thus, Officer Mahon is not entitled to qualified immunity.

     In sum, viewing the facts in the light most favorable to Plaintiff, Officer Mahon drove into his yard, Plaintiff's girlfriend/wife was leaving as Officer Mahon arrived, Plaintiff asked Officer Mahon to leave his property, and Officer Mahon tased him. As implausible as this scenario sounds, the court does not make credibility determinations and, thus, issues of material fact exist.

Accordingly, summary judgment is not appropriate on Plaintiff's excessive force claim.[7]

## C. Supervisory Liability

Defendants move for summary judgment to the extent Plaintiff seeks to hold Chief Shepherd liable for Officer Mahon's conduct. Because there is no doctrine of respondeat superior in § 1983 claims, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw, 13 F.3d at 799. Plaintiff argues that Chief Shepherd knew of and "cosigned" Officer Mahon's illegal behavior by signing two "Solicitor's Case Report" documents as Officer Mahon's approving officer. See Solicitor's Case Reports (Ex. Z to Pl. Resp.). These documents relate to the charges against Plaintiff from April 14, 2015, and May 2, 2015, and are checklists for what information is included in the report. The actual

---

[7]Defendants also argue that summary judgment is appropriate for Plaintiff's failure to abide by the court's order (Document # 65) directing him to submit certain documents. Although Plaintiff submitted his requests for subpoenas, they did not include all of the information required by the court. However, this is not a sufficient basis for dismissal.

reports have not been provided. Nevertheless, as discussed above, Plaintiff has failed to present sufficient evidence to show that Officer Mahon's actions with respect to the arrests on those two dates were unconstitutional. Accordingly, Plaintiff fails to present sufficient evidence to show any supervisory liability on the part of Chief Shepherd.

### D.    Search of Plaintiff's House

Plaintiff alleges that Chief Shepherd, Officer Mahon, and Officer Gore "without showing a search warrant or permission went in my house and got a lot of items . . . and several days later (as I was not present during the alleged search) served me with warrants relevant to the same." Pl. Am. Compl. pp. 4, 14 of 18. Absent consent or exigent circumstances, "the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." Steagald v. United States, 451 U.S. 204, 211 (1981). However, Plaintiff does not allege that Defendants did not have a search warrant. In fact, he states that he was later served with a search warrant since he was not present during the search. He also does not allege that the warrant with which he was served was invalid. See Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir.1994) (holding that a facially valid search warrant will be found to violate the Fourth Amendment only if it contains false or misleading statements that are necessary to the finding of probable cause) (citing Franks v. Delaware, 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Finally, while Plaintiff alleges that his house and vehicle were damaged following his arrest, he does not allege that Defendants caused the damage, only that they did not prevent it. Any negligence on the part of the Defendants in this regard does not rise to the level of a constitutional violation. See Miller v. Prince George's County, MD, 475 F.3d 621, 627-28 (4th Cir. 2007) (citing Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)) (recognizing that a plaintiff's allegations of

-17-

negligence by a police officer will not provide a basis for a constitutional violation). In addition, a deprivation of property is not cognizable under § 1983 if a meaningful post-deprivation remedy for loss is available. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides the plaintiff with a viable remedy for the loss of personal property. See Yates v. Jamison, 782 F.2d 1182, 1183-85 (4th Cir.1986). Under South Carolina law, Plaintiff's claim relating to property loss are cognizable under the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, et seq. Accordingly, dismissal of this claim is appropriate pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (providing that the court shall dismiss a claim at any time if the plaintiff fails to state a claim on which relief may be granted).

### E.     Plaintiff's Motion for Preliminary Injunction/to Compel

In this motion, Plaintiff asks the court to compel the Irwin County Detention Center to transport his legal box, which contains documents critical to his all of his actively pending cases in this and other United States Courts, to his current location. Plaintiff asserts that the detention center vowed to destroy his documents if he did not pay $50.00 for the transfer.

First, the Irwin County Detention Center is not a party to this action. Second, a party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); The Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342, 346–47 (4th Cir.2009), vacated on other grounds, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010), restated in

relevant part on remand, 607 F.3d 355 (4th Cir.2010) (per curiam). A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim presently before the court. Winter, 555 U.S. at 22; Real Truth, 575 F.3d at 345–46. Plaintiff fails to address these elements or present sufficient facts or evidence to satisfy them. A preliminary injunction is an extraordinary and drastic remedy, and in the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. See Munaf v. Geren, 553 U.S. 674, 689-90 (2008); Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). Because Plaintiff has failed to show such circumstances, it is recommended that his Motion for Preliminary Injunction be denied.

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 81) be denied as to the excessive force claim against Officer Mahon and granted as to his false arrest and supervisory liability claims.[8] It is further recommended that

---

[8] Defendants argue that this case should be dismissed in its entirety because Plaintiff failed to serve them with the Amended Summons and Amended Complaint pursuant to Federal Rule of Procedure 4(e). However, service of amended pleadings on parties who have already been served with original process is governed by Federal Rule of Civil Procedure 5, not Rule 4. See Fed.R.Civ.P. 5(a)(1)(B). Rule 5(b)(2)(E) allows for service of documents under this rule to be made on the party's attorney by electronic transmission if the attorney has consented to such service. The court's ECF Policies and Procedures Manual states that attorneys consent to electronic service by registering as an ECF filing user (§ 2.4) and that the transmission of the Notice of Electronic Filing (NEF) email constitutes service of the filed document (§ 11.2.1(a)). Therefore, service of the amended complaint was accomplished on Defendants Mahon and Shepherd on the date the amended complaint was docketed and the NEF emailed to their attorney. To the extent Defendants argue insufficient service of the original complaint, they have forfeited that argument by actively participating in the litigation of this case. See, e.g., Patterson v. Whitlock, 392 Fed.Appx. 185, 193 (4th Cir. 2010) (finding that the defendants waived their opportunity to challenge service where they raised in their answer in "barebones fashion only" and then waited over a year before filing a motion seeking dismissal on that basis); see also King v. Taylor, 694 F.3d 650, 660 (6th Cir. 2012) (finding that even where a defendant properly preserves

Plaintiff's claim regarding the search of his house and loss of property be summarily dismissed.

It is further recommended that Plaintiff's Motion for Preliminary Injunction/to Compel (Document # 88) be denied.

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

January 31, 2017
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

a Rule 12(b) defense by including it in an answer, he forfeits the right to seek a ruling on the defense at a later juncture through his conduct during the litigation); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999) (noting that the issue is more properly considered one of forfeiture rather than waiver). Service has not been authorized for Defendant Gore because, as set forth above, the only claim asserted against him is subject to summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

-20-